UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

Daniel Hicks and
Sandra Hicks

    v.

Atrium Medical Corporation,
Maquet Cardiovascular US
Sales, LLC, and Getinge AB

Civil No. 17-cv-70-LM
Opinion No. 2019 DNH 134

In re: Atrium Medical Corp.
C-QUR Mesh Products Liability
Litigation (MDL No. 2753)

O R D E R

Daniel and Sandra Hicks bring suit against Atrium Medical Corporation ("Atrium"), a medical device company that manufactured and sold C-QUR mesh, and two related companies, Maquet Cardiovascular US Sales, LLC ("Maquet") and Getinge AB ("Getinge"), alleging product liability claims, breach of warranty claims, violation of consumer protection laws, and a loss of consortium claim. This suit is part of a multi-district litigation ("MDL") proceeding involving claims that C-QUR mesh was, among other things, defective and unreasonably dangerous and caused injury when surgically implanted for hernia repair. This case was selected in the MDL proceeding for the Initial Discovery Pool, making it a bellwether case. Defendants Atrium and Maquet move to dismiss plaintiffs' claims on a variety of grounds.[1] Plaintiffs object.

---

[1] Getinge has filed a separate motion to dismiss in the main MDL case contending that the court lacks personal jurisdiction over it. That motion remains pending. Getinge does not join in the instant motion.

**STANDARD OF REVIEW**

Under Rule 12(b)(6), the court must accept the factual allegations in the complaint as true, construe reasonable inferences in the plaintiff's favor, and "determine whether the factual allegations in the plaintiff's complaint set forth a plausible claim upon which relief may be granted." Foley v. Wells Fargo Bank, N.A., 772 F.3d 63, 71 (1st Cir. 2014) (internal quotation marks omitted). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

**BACKGROUND**

Plaintiffs Daniel and Sandra Hicks are residents of Florida. In January 2012, Daniel had a surgical procedure in which his physician implanted C-QUR mesh to repair a hernia.[2] In February 2015, Daniel consulted with a doctor in Brandon, Florida, because of epigastric pain and nausea. He then had further symptoms. On March 13, 2015, he underwent a diagnostic laparotomy procedure at Brandon Regional Hospital in Brandon, Florida, during which the mesh was removed, and other procedures were done, including resection of the small bowel.

Atrium, which designed, marketed, and sold the C-QUR mesh that was implanted into Daniel, is located in New Hampshire. Maquet is located in New Jersey, and Getinge is a Swedish corporation. Plaintiffs allege that Maquet and Getinge are responsible for Atrium's

---

[2] Plaintiffs do not allege where the initial hernia repair procedure was done. Defendants assert that the procedure was done in Indiana, and plaintiffs do not dispute that was the case.

actions and exercised control over Atrium with respect to oversight and compliance with applicable safety standards.

Plaintiffs allege, among other things, that defendants designed, manufactured, marketed, and sold C-QUR mesh to be used by surgeons for hernia repair. C-QUR mesh was intended to be permanently implanted for those repairs, and defendants represented that C-QUR mesh was safe and effective for that purpose. They further allege that C-QUR mesh was not safe or effective for its intended purpose, that defendants failed to adequately research and test it to determine the risks and benefits of the mesh, and that they failed to warn of risks although they had been notified that the mesh was causing widespread catastrophic complications. Plaintiffs bring claims for negligence (Count I), strict liability – design defect (Count II), strict liability – manufacturing defect (Count III), strict liability – failure to warn (Count IV), breach of express warranty (Count V), breach of implied warranties of merchantability and fitness of purpose (Count VI), violation of consumer protection laws (Count VII), and loss of consortium (Count VIII). They seek compensatory and enhanced compensatory damages.

## DISCUSSION

Defendants Atrium and Maquet contend that plaintiffs' breach of warranties claims (Counts V and VI) are time-barred under the applicable statute of limitations. They also argue that Indiana law governs the liability portion of plaintiffs' claims and that their claims fail under the applicable law. Plaintiffs object, arguing that their breach of warranties claims are not time-barred, that a choice of law is premature, and that if a choice of law were done New Hampshire law would apply.

I. <u>Statute of Limitations</u>

Defendants contend that plaintiffs' breach of warranties claims, Counts V and VI, are barred by the statute of limitations. The parties agree that New Hampshire's statute of limitations, as a procedural rule of the forum state, apply in this case. See TIG Ins. Co. v. EIFlow Ins. Ltd., No. 14-cv-459-JL, 2015 WL 5714686, at *3 (D.N.H. Sept. 29, 2015) (discussing circumstances under which it is appropriate for this court sitting in diversity to apply New Hampshire's statute of limitations). They further agree the breach of warranties claims are governed by RSA 382-A:2-725.

RSA 382-A:2-725(1) states that "[a]n action for breach of any contract for sale must be commenced within four years after the cause of action has accrued." "A cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach." RSA 382-A:2-725(2). "A breach of warranty occurs when tender of delivery is made, except that where a warranty explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance the cause of action accrues when the breach is or should have been discovered." <u>Id.</u>

The discovery rule for future performance does not apply to implied warranties. Kelleher v. Marvin Lumber & Cedar Co., 152 N.H. 813, 853 (2005). In addition, while equitable tolling and the fraudulent concealment rule may extend the limitation period for purposes of a claim of breach of an express warranty, they do not apply to breach of implied warranties claims. Begley v. Windsor Surry Co., Civ. No. 17-cv-317-LM, 2018 WL 1401796, at *8 (D.N.H. Mar. 19, 2018) (relying on Lockheed Martin Corp. v. RFI Supply, Inc., 440 F.3d 549, 556-57 (1st Cir. 2006)).

Defendants assert that the breach of warranties claims accrued when the mesh product was implanted on January 25, 2012, which is more than four years before plaintiffs brought suit

in February 2017. Plaintiffs contend that defendants' warranties extended to future performance of the mesh and, therefore, the accrual date is extended to when the breach of warranty was discovered or should have been discovered. In their reply, defendants argue that the future performance extension does not apply because no such explicit warranty was made and that the future performance extension does not apply to implied warranty claims.

As stated above, the discovery rule for future performance does not apply to implied breach of warranty claims. Nor does equitable tolling or fraudulent concealment. Therefore, plaintiffs' claim for breach of implied warranties, Count VI, accrued on January 25, 2012, the date of implantation. Because plaintiffs brought this suit more than four years later, Count VI is dismissed as untimely.

The discovery rule for future performance does apply to the breach of express warranty claim if defendants' express language warranted the performance of the mesh for a future period of time or permanently. Kelleher, 152 N.H. at 828. At this stage of the litigation, the court is limited to the allegations in the complaint and does not have defendants' actual advertising or marketing materials. Plaintiffs allege that defendants warranted that the mesh product was safe and fit for its intended purpose, which was to be surgically implanted into patients. As such, the court may make the reasonable inference that in advertising, marketing, and otherwise promoting C-QUR mesh, defendants expressly warranted the future performance of the mesh product after implant. Therefore, plaintiffs' allegations are sufficient to preclude dismissal of the breach of express warranty claim, Count V, as time-barred at this stage of the litigation. Defendants' statute-of-limitations defense to this claim is better raised in a properly supported motion for summary judgment.

II.  Choice of Law

As a preliminary matter, plaintiffs include a section in their objection that is titled "Ripeness of Choice of Law Determination." Doc. no. 160 at 8. They note that "[t]here is no rule allowing nor prohibiting choice of law determinations at the motion to dismiss stage." Id. Plaintiffs go on to discuss cases that address whether the record was sufficiently developed to allow a choice-of-law determination at an early stage of the litigation. They assert that "case-specific depositions have not yet taken place and very little case-specific written discovery has taken place." Id. at 10.

Although the parties have not engaged in intensive fact discovery, plaintiffs do not explain what specific information is lacking that is necessary for the choice-of-law analysis that can be obtained only through discovery. The location of where defendants manufactured the allegedly defective products and where Daniel had his surgery is not in dispute. Therefore, plaintiffs have not shown that the choice-of-law determination is premature, and the court employs the analysis.

The parties agree that New Hampshire choice-of-law principles govern the choice of law in this bellwether case. See, e.g., Lexington Ins. Co. v. Gen. Acc. Ins. Co. of Am., 338 F.3d 42, 46 (1st Cir. 2003) (noting that in "determining what state law is relevant, a federal court must apply the choice-of-law framework of the forum state"). "Under New Hampshire choice-of-law principles, when more than one state may have an interest in the suit and the choice involves substantive law, the court must first decide whether relevant New Hampshire law actually conflicts with the laws of the other interested states." SIG Arms Inc. v. Emp'rs Ins. of Wausau, 122 F. Supp. 2d 255, 258–59 (D.N.H. 2000). An actual conflict exists only when application of the laws of an interested state other than the forum would change the outcome. Lambert v.

Kysar, 983 F.2d 1110, 1114 (1st Cir. 1993).  When no actual conflict is shown, the court will apply the law of the forum state which, in this case, is New Hampshire.  Aftokinito Props, Inc. v. Millbrook Ventures, LLC, No. 09-cv-415-JD, 2010 WL 3168295, at *3 (D.N.H. Aug. 9, 2010).  The party who asserts that the law of another state is different from the law of the forum state bears the burden of proving the content of the foreign law.  SIG Arms, 122 F. Supp. 2d at 259.

Both New Hampshire, where Atrium manufactured the allegedly defective mesh products, and Indiana, where the mesh was implanted, are interested states.[3]  Defendants argue that the product liability laws of New Hampshire and Indiana conflict because Indiana has consolidated all product liability claims, regardless of the theory of relief, under the Indiana Product Liability Act, Ind. Code. § 34-20-1-1, et seq.  See Bowersock v. Davol, Inc., 236 F. Supp. 3d 1074, 1084 (S.D. Ind. 2017), aff'd sub nom. Robinson v. Davol Inc., 913 F.3d 690 (7th Cir. 2019).  In contrast, product liability in New Hampshire is governed by common law, which allows claims under a variety of theories, including strict liability and negligence.  See Short v. Amerada Hess Corp., No. 16-cv-204-JL, 2019 WL 1430106, at *15 (D.N.H. Mar. 29, 2019).

Plaintiffs argue that despite this difference, defendants, who bear the burden to show an actual conflict, have not shown that the application of Indiana law would change the outcome of their claims.  The court agrees.  Although the Indiana Product Liability Act abrogated common law product liability claims, defendants have not shown that the same claims are unavailable under the Act.

In their memorandum in support of their motion to dismiss and in their reply, defendants note several differences between New Hampshire and Indiana product liability law.  For

---

[3] Neither defendants nor plaintiffs suggest that Florida is an interested state although a surgical procedure was done there and plaintiffs currently live there.

example, defendants cite a rule, not recognized in New Hampshire, that requires a plaintiff in Indiana to plead and prove that a feasible alternative design exists in order to maintain a design defect claim.  See doc. no. 156-1 at 6.  They also assert that different standards apply to plaintiffs' claims in each jurisdiction.

Although defendants show that differences exist between New Hampshire and Indiana product liability law, they have not shown that these differences would change the outcome of plaintiffs' claims.[4]  In other words, defendants have failed to show that plaintiffs could not allege facts that would satisfy the standard imposed by the Indiana Product Liability Act.  Because defendants have not carried their burden, the court will apply New Hampshire law to the liability portion of plaintiffs' claims.  See Aftokinito, 2010 WL 3168295, at *3.

III.    Merits of the Claims

Defendants move to dismiss plaintiffs' claims on the ground that the claims are subsumed by the Indiana Product Liability Act.  Because the court has determined that New Hampshire law applies, defendants' arguments based on Indiana law lack merit.

Defendants also argue that plaintiffs' claim for violation of consumer protection laws, Count VII, should be dismissed because the allegations in support of the claim fail to meet the heightened pleading requirement of Federal Rule of Civil Procedure 9(b), which applies to such claims.  See, e.g., Micronics Filtration Holdings, Inc. v. Miller, No. 18-cv-303-JL, 2018 WL

---

[4] Defendants appear to suggest in their reply that plaintiffs bear the burden to show the law of Indiana and New Hampshire is the same.  See doc. no. 162 at 7 (stating that plaintiffs "do nothing to show how the jurisdictions are in harmony").  To the extent defendants intended to argue that plaintiffs bear the burden to show the absence of an actual conflict between New Hampshire and Indiana law, they are mistaken.

4845749, at *6 (D.N.H. Oct. 4, 2018) (noting that Rule 9(b) applies to allegations supporting a New Hampshire Consumer Protection Act claim that sound in fraud).[5]

Defendants' arguments are without merit. Plaintiffs includes several allegations in their complaint that are sufficient to meet Rule 9(b)'s heightened pleading requirement. These include, but are not limited to, allegations that: (1) defendants intentionally misled physicians about the specific dangers of their products, doc. no. 154 at ¶ 34; (2) defendants adjusted the threshold for reporting and recalling the C-QUR mesh due to nonconformities, id. at ¶ 60; and (3) defendants manipulated clinical studies to make it appear as if their products were safe when they were not, id. at 61. These allegations are sufficient at this stage of the litigation.

## CONCLUSION

For the foregoing reasons, defendants' motion to dismiss (doc. no. 156) is granted as to Count VI (breach of implied warranties) and is otherwise denied.

SO ORDERED

_____
Landya B. McCafferty
United States District Judge

August 22, 2019

cc: Counsel of Record

---

[5] Plaintiffs reference both the New Hampshire Consumer Protection Act and the Indiana Deceptive Sales Act in their complaint. See doc. no. 154 at ¶ 165. Because the court has determined that New Hampshire applies to plaintiffs' claims, the court addresses the sufficiency of plaintiffs' allegations in the context of the New Hampshire Consumer Protection Act.