UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

Daniel Hicks and
Sandra Hicks

     v.                                      Civil No. 17-cv-00070-LM
                                            Opinion No. 2020 DNH 041

Atrium Medical Corporation and
Maquet Cardiovascular US Sales, LLC


In re: Atrium Medical Corp.
C-QUR Mesh Products Liability
Litigation (MDL No. 2753)

## O R D E R

Daniel and Sandra Hicks bring suit against Atrium Medical Corporation ("Atrium"), a medical device company that manufactured and sold C-QUR mesh, and a related company, Maquet Cardiovascular US Sales, LLC ("Maquet"), alleging product liability claims, a breach of express warranty claim, violation of consumer protection laws, and a loss of consortium claim. This suit is part of a multi-district litigation ("MDL") proceeding involving claims that C-QUR mesh was, among other things, defective and unreasonably dangerous and caused injury when surgically implanted for hernia repair. This case was selected in the MDL proceeding for the Initial Discovery Pool, making it a bellwether case. This case was then selected for the Trial Pool, from which it may be selected by the parties as one of the first trials in this MDL proceeding. Defendants move under Federal Rule of Civil Procedure 37(c)(1) to strike as untimely plaintiffs' expert disclosure and report by Dr. Christine Knabe, DMD, Ph.D. Doc. no. 183. Plaintiffs object.

**STANDARD OF REVIEW**

Under Federal Rule of Civil Procedure 26, a party must "disclose to other parties the identity of any witness it may use at trial to present [expert] evidence." Fed. R. Civ. P. 26(a)(2)(A). Where, as here, a district court has established a disclosure deadline, a party must disclose the expert's identity by the court-ordered deadline. See Fed. R. Civ. P. 26(a)(2)(D). If a party's expert disclosure is untimely under these rules, the party may not use the expert or the expert's report "to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1); see also Esposito v. Home Depot U.S.A., Inc., 590 F.3d 72, 77 (1st Cir. 2009).

**BACKGROUND**

In 2012, Mr. Hicks had a surgical procedure in which his physician implanted C-QUR mesh to repair a hernia. In February 2015, Mr. Hicks consulted with his physician after experiencing concerning symptoms including epigastric pain and nausea. In March 2015, he underwent a diagnostic laparotomy, during which the hernia mesh was removed. In June 2015, plaintiffs' counsel sent a request to the hospital where Mr. Hicks had his hernia mesh removed (hereinafter referred to as "the explant facility") to preserve and relinquish to them any pathology material related to that procedure. The explant facility represented that it did not have a pathology specimen for Mr. Hicks because it had discarded the specimen after the procedure.

In February 2017, plaintiffs filed this suit alleging the following claims: negligence; strict liability on theories of design defect, manufacturing defect, and failure to warn; breach of

express warranty; violation of consumer protection laws; and loss of consortium.[1] The parties selected this suit as a bellwether case for case-specific discovery in July 2018 and then selected it for the Trial Pool in July 2019. The court-appointed deadline for plaintiffs' expert disclosures was September 17, 2019.

Approximately two months prior to that expert disclosure deadline, on July 22, 2019, plaintiffs' counsel contacted their preservation contractor, SciSafe, to confirm that no pathology specimen for Mr. Hicks existed. SciSafe affirmed that the sample had been discarded by the explant facility. To be doubly sure, plaintiffs' counsel directed SciSafe to contact the explant facility to confirm that neither the explant facility nor any affiliated facility had pathology material in any form from Mr. Hicks. The explant facility then reversed its earlier position and notified plaintiffs that it might have paraffin blocks containing relevant pathology material. At some point after July 30, 2019, plaintiffs confirmed that the explant facility possessed relevant pathology specimens.

By the end of August 2019, plaintiffs had notified defendants about the existence of the sample. The parties agreed that the explant facility should divide the pathological material into slides so that each party would have their own samples. The parties directed the explant facility to divide the specimen and send plaintiffs' slides directly to Dr. Knabe in Germany and defendants' slides to their pathology preservation contractor, Steelgate. The parties then learned that the explant facility would not be able to divide the specimen into slides until September 17, 2019, at the earliest. Given this delay in acquiring the slides, the parties agreed to extend the expert disclosure deadline related to this pathology specimen to October 1, 2019.

---

[1] Plaintiffs also asserted a claim of breach of implied warranties of merchantability and fitness of purpose, which this court dismissed. Doc. no. 172.

3

On the September 17 expert disclosure deadline, plaintiff disclosed its non-pathology experts. But the October 1 deadline came and went without any further disclosure. On October 2, 2019, plaintiffs learned that the explant facility had mistakenly sent both plaintiffs' and defendants' slides to Steelgate, rather than sending plaintiffs' slides directly to their expert. Plaintiffs' slides finally reached Dr. Knabe on October 11.

Approximately two months later, on December 12, 2019, plaintiffs designated Dr. Knabe as a case-specific retained expert witness in pathology. Her expert report opines on the cause of Mr. Hicks's hernia repair failure, including Atrium's deficient design of the hernia mesh and failure to adequately evaluate the product before it was released on the market. See doc. no. 183-2. On January 6, 2020, defendants filed this motion to strike plaintiffs' disclosure of Dr. Knabe as untimely.

## DISCUSSION

It is undisputed that plaintiffs disclosed Dr. Knabe after the court-appointed deadline and after the parties' agreed-to extension of the deadline. The court finds, however, that plaintiffs' late disclosure is substantially justified under the unique circumstances presented and that, given the parties' agreed-to extension of deadlines, the late disclosure is harmless. See Fed. R. Civ. P. 37(c)(1).

I.   Substantially Justified

The unique sequence of events in this case demonstrates that plaintiffs' late disclosure is substantially justified. The facts described above show that plaintiffs' disclosure was delayed due, in large part, to misinformation and circumstances outside of their control. Plaintiffs did not

4

even learn of the possible existence of Mr. Hicks's pathology sample until two months prior to their original expert disclosure deadline. Once they confirmed the existence of the sample, other unforeseen delays arose: the explant facility took longer than expected to divide the sample and then plaintiffs' slides were initially delivered to the wrong location. The court finds that these circumstances substantially justify plaintiffs' late disclosure of Dr. Knabe. See Al-Ghena Int'l Corp. v. Radwan, No. 13-61557-CIV, 2016 WL 8203480, at *2 (S.D. Fla. May 17, 2016) (finding late disclosure of evidence during trial substantially justified in part because plaintiffs were previously unaware of the evidence due to an innocent and inadvertent failure to search email account for certain terms); Morel v. Daimler-Chrysler Corp., 259 F.R.D. 17, 21 (D.P.R. 2009) (allowing late disclosure of substitute expert when original expert suffered unforeseeable illness and died).[2]

II.  Harmless

Even if the court did not find plaintiffs' late disclosure substantially justified, it would nonetheless find the late disclosure harmless. A late disclosure is harmless if it "occurs long before trial and is likely subject to correction without much harm to the opposing party." Samos Imex Corp. v. Nextel Commc'ns, Inc., 194 F.3d 301, 305 (1st Cir. 1999). Here, since the filing of defendants' motion to strike, the parties have agreed to extend the deadlines for disclosure of certain experts, filing of pre-trial motions, and for trial in the first of the Trial Pool cases. See In re: Atrium Medical Corp. C-Qur Mesh Products Liability Litg., 16-md-02753-LM, Endorsed

---

[2] The court notes, however, that plaintiffs could and should have communicated with defendants about these delays more effectively by, for example, requesting an extension of the October 1 deadline when it became clear that it was unrealistic.

Order Feb. 7, 2020 (granting joint motion to extend deadlines, doc. no. 1182). For example, the parties have agreed that plaintiffs should have more time to disclose their regulatory expert because the regulatory expert they previously designated had unexpected health issues. And, importantly, the parties have agreed to push the date of the first trial of the Trial Pool from May to September 2020. Given this timeline, defendants will have ample time to depose Dr. Knabe and prepare to adequately cross-examine her at trial—should this case be selected as the first trial. See [Ferrara & DiMercurio v. St. Paul Mercury Ins. Co., 240 F.3d 1, 10-11 (1st Cir. 2001)](#) (affirming district court's denial of motion to strike late-disclosed expert when substitute expert was disclosed three months before trial); [Downeast Ventures, Ltd. v. Washington Cty., 450 F. Supp. 2d 106, 112 (D. Me. 2006)](#) (finding plaintiffs' late disclosure of expert harmless when defendants had time before trial to depose that expert and to designate any opposing experts).

In addition to having an opportunity to depose Dr. Knabe, the court will permit defendants to designate their own pathology expert to opine on Mr. Hicks's pathology slides. The court will also allow defendants to amend and/or supplement their other expert reports as they deem necessary. Based on the parties' history of working cooperatively to set deadlines, the court expects that the parties will be able to agree to deadlines regarding completion of this additional expert discovery. Should the parties be unable to do so, they may raise the issue for discussion at the court's next regularly scheduled status conference. If, due to the need to conduct additional expert discovery, the parties find that the current deadlines and trial selection schedule are no longer feasible, the court will favorably entertain another joint motion to extend deadlines.

In sum, defendants learned of this late-disclosed expert well before the potential trial date and will have a fair opportunity to depose her and supplement their expert discovery accordingly.

Under these circumstances, the court finds that plaintiffs' late disclosure of Dr. Knabe is harmless.

## CONCLUSION

Because the court finds that plaintiffs' late disclosure of Dr. Knabe was substantially justified and is harmless, see Fed. R. Civ. P. 37(c)(1), the court denies defendants' motion to strike (doc. no. 183).

SO ORDERED.

_____
Landya McCafferty
United States District Judge

March 19, 2020

cc: Counsel of Record